UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                             Plaintiff,

                                                                                   <u>DECISION AND ORDER</u>

                                                                                    08-CV-6287L

                              v.

The Sum of $185,336.07 United States Currency
Seized from Citizen's Bank Account L7N-01967,

                             Defendant.
_____

INTRODUCTION

      The United States ("Government") commenced this *in rem* forfeiture action, seeking the sum of $185,336.07 United States currency pursuant to 21 U.S.C. §881(a)(6). The subject currency was seized by law enforcement officers from Dominic Pellegrino ("claimant") on June 20, 2007 on the grounds that it had been furnished, or was intended to be furnished, in connection with the illegal exchange of controlled substances.

      On June 30, 2008, the Government commenced this civil forfeiture action. On October 23, 2009, claimant filed a verified claim, requesting that the subject currency be returned to him because it was the product of lawful activity.

      The Government now moves for summary judgment in its favor (Dkt. #19). For the following reasons, that motion is granted.

DISCUSSION

Rule 56(c) provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When considering a motion for summary judgment, the Court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), *quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). To defeat a properly-supported summary judgment motion, the non-movant must offer evidence in admissible form, setting forth specific facts that show that there is a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). Statements submitted in opposition to summary judgment must be based on personal knowledge, "set forth such facts as would be admissible in evidence," and show that the declarant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). As such, "hearsay assertions that would not be admissible at trial [are] insufficient to create a genuine issue for trial." *Id.*, 375 F.3d 206 at 219, *citing Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999).

The Controlled Substances Act provides for the civil forfeiture of "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance[,] all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter." 21 U.S.C. §881(a)(6). In proving entitlement to civil forfeiture, the Government must demonstrate, by a preponderance of the evidence, that the defendant assets are forfeitable. *See Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). That is, "the Government must show that it has reasonable grounds to believe that [the] property is subject to forfeiture. These grounds must rise above the level of mere suspicion but need not amount to what has been termed 'prima facie proof.'" *United States v. $ 8,880 in United States Currency*, 945 F. Supp. 521, 523-524

(W.D.N.Y. 2006) (internal quotations omitted).  The Government need not link the [subject] property to a particular transaction or show a substantial connection between the drug activities and the property in question, "but only a nexus between them." *Id.*, *quoting United States v. Daccarett*, 6 F.3d 37, 55 (2d Cir. 1993).  Such a nexus may be established through the use of circumstantial evidence.  *See Daccarett*, 6 F.3d 37 at 56.

Once the Government meets its burden of proof to establish probable cause, "the ultimate burden of proving that the factual predicates for forfeiture have *not* been met" shifts to the claimant. *United States v. One Parcel of Property Located at 15 Black Ledge Drive*, 897 F.2d 97, 101 (2d Cir. 1990) (emphasis added).

I find that the Government has demonstrated probable cause for forfeiture here.  It is undisputed that on and around April 27, 2007, while investigating a claim from a confidential informant that he had engaged in hundreds of prior illegal narcotics buys from the claimant, undercover officers purchased prescription narcotics from the claimant at his residence.  On May 3, 2007, law enforcement executed a valid search warrant at the property, and confiscated nearly 5,000 pills representing approximately fourteen different drugs, .31 grams of crack cocaine, two crack pipes, and records relating to claimant's banking activities.  After the search, claimant was arrested and charged with Criminal Possession of a Controlled Substance in the Third Degree pursuant to N.Y. Penal Code §220.16(1).  On July 11, 2008, claimant pled guilty in state court to one count of Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Code §220.03). By that plea, the claimant admitted to possessing illegal narcotics at his residence in May 2007.

After reviewing the financial documents seized from claimant during the May 3, 2007 search, investigators determined that the claimant had made a series of substantial bank deposits over a three-year period, totaling $169,000.00.  Although claimant had failed to file tax returns from 2001 to 2006, he had indicated on a new bank account form application that he was unemployed, collecting Social Security disability benefits, and receiving an annual gross income of only $12,000.00, with liquid assets of $150,000.  After completing a full analysis of claimant's banking

transactions and his statement concerning his income, investigators determined that the claimant was receiving unexplained income in the average amount of $52,260.00 annually. The mass volume of controlled substances seized from claimant's home, the testimony of a confidential informant that he had engaged in over 700 purchases of controlled substances from claimant over the previous four years, the undercover narcotics buy, and the absence of any apparent legitimate source of income, led investigators to conclude that the source of claimant's unreported and unexplained excess income was the sale of illegal narcotics.

As a general rule, evidence that a claimant lacks a "legitimate, legal source of income," combined with evidence of engagement in drug trafficking, is sufficient to meet the Government's burden of proof and support forfeiture. *See e.g.,$8,800 in U.S. Currency*, 945 F. Supp. 521 at 525. Furthermore, the non-filing of tax returns has been held "to negate the existence of a legitimate source of income." *United States v. Hinton*, 543 F.2d 1002, 1013 (2d Cir. 1986). *See also United States v. Giles*, 2000 U.S. App. LEXIS 6894 at *5-*6 (2d Cir. 2000) (finder of fact may properly consider failure to file tax return in determining whether income was legitimately derived). ; *United States v. St. Prix*, 672 F.2d 1077, 1084 (2d Cir. 1982) (same). Here, the undisputed facts surrounding the law enforcement investigation into drug trafficking by claimant, claimant's guilty plea to drug trafficking, the lack of evidence pointing to a legitimate source for the subject funds, and claimant's failure to file tax returns showing a legitimately-derived source of income, together establish that the subject funds are traceable to drug trafficking.

In attempting to demonstrate that grounds for forfeiture do not exist, the claimant contends that the seized funds were legitimately derived, and constituted a combination of payments from a personal injury claim, insurance payments, and a retirement payout, all gradually deposited over a three-year period. In support of this contention, claimant has submitted a photocopy of an alleged litigation settlement "closing statement" which lists net proceeds of $57,000.00 slated to be paid to claimant (in 2004, according to a handwritten notation of unknown origin which appears on the document), copies of e-mail correspondence from March 2011 allegedly documenting unsuccessful

efforts to determine what happened to an unidentified retirement benefit account, and a copy of correspondence from claimant's counsel containing a hearsay report that the claimant failed to file tax returns between 1995 and 2006 because he "only collected social security income" during that period. (Dkt. #21-2, #21-4).

Initially, the evidence produced by claimant is unconvincing on its face, fails to establish that claimant ever actually received any income from a legitimate source during the time period in question, and is internally inconsistent (for example, suggesting that the claimant may have received settlement monies in 2004, but simultaneously stating that the claimant received no income except for Social Security payments between 1995 and 2006). Furthermore, the exhibits upon which claimant relies are simply appended to the memorandum of law signed by claimant's counsel, and are unsupported by any sworn affidavit, verification, or other declaration by someone with personal knowledge explaining their identity, factual background or relevance to the instant action. As such, the Court could not consider them in any event. *See Local 282, IBT v. JJP Realty Holding Corp.*, 1997 U.S. App. LEXIS 7627 at *6 (2d Cir. 1997) ("[p]urported statements of fact in a memorandum of law, or in an affidavit by one without personal knowledge are, of course, insufficient to defeat a properly supported motion for summary judgment"); *Randell v. United States*, 64 F.3d 101, 109 (2d Cir. 1995) ("unsupported assertions [by a party's counsel are] inadequate to defeat a motion for summary judgment"). *See generally* Fed. R. Civ. P. 56(c) and (e) (response to properly supported summary judgment must be by affidavits made on personal knowledge, depositions, answers to interrogatories, and admissions on file).

Even assuming that its other deficiencies were ignored, the claimant is not entitled to the Court's consideration of this evidence, because of its transparently eleventh-hour introduction. Throughout discovery, the claimant has ignored the Government's requests for documentary evidence in support of his "legitimate source" claim, and refused to testify concerning the sources for the subject monies (legitimate or otherwise) at his deposition, instead opting to invoke the Fifth Amendment privilege against self-incrimination. Having prevented the Government from previously

discovering evidence purportedly showing that at least a fraction of the subject assets were lawfully obtained, the claimant is not entitled to produce it now.

The Government is also entitled to the drawing of a negative inference relative to the claimant's invocation of his Fifth Amendment rights for the apparent purpose of frustrating discovery. An invocation of the Fifth Amendment "is not a substitute for relevant evidence," and one claiming the privilege is not thereby "freed from adducing proof in support of a burden which would otherwise have been his." *See United States v. 4003-4005 5th Ave*, 55 F.3d 78, 82 (2d Cir. 1995). Indeed, "[i]f it appears that a litigant has sought to use the Fifth Amendment to abuse or obstruct the discovery process, trial courts, to prevent prejudice to opposing parties, may adopt remedial procedures or impose sanctions." *Id*., 55 F.3d 78 at 84-85. *See also SEC v. Pittsford Capital Income Partners, LLC*, 2007 U.S. Dist. LEXIS 62338 at *48 (W.D.N.Y. 2007) ("in a civil case, [a litigant] cannot have it both ways. By hiding behind the protection of the Fifth Amendment as to his contentions, he gives up the right to prove them"). In short, having long prevented the Government from proving or disproving his defense that the monies at issue were lawfully obtained, the claimant cannot now, at the final hour, purport to prove that defense with "evidence" that has been undisclosed, unconfirmed, and hidden from cross-examination solely by his own, purposeful and strategic tactic. Thus, even if the evidence submitted by the claimant merited the Court's consideration and was otherwise admissible, it would be insufficient to raise a question of fact concerning whether a portion of the subject monies were lawfully obtained, since the Government would be entitled to the opposite inference, based on the claimant's refusal to timely disclose evidence or testify regarding the allegedly lawful source of the subject funds.

For these reasons, I find that the undisputed facts concerning the totality of the circumstances establish, by a preponderance of the evidence, that the entire amount of the subject funds is traceable to the contemporaneous drug trafficking activities to which claimant pled guilty in state court.

I have considered the remainder of the arguments made by claimant, and find them to be without merit.

CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment and forfeiture of the subject funds (Dkt. #19) is granted in its entirety. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 2, 2012.